IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EUGENE BERNARDO, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) 13 C 7085 |
| | ) |
| J.D. NICHOLAS & ASSOCIATES, INC. et al., | ) Judge Virginia M. Kendall |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Eugene Bernardo filed a complaint against Defendant J.D. Nicholas & Associates alleging violations of federal securities laws and fraud in connection with the marketing and sale of securities. J.D. Nicholas moves to compel arbitration in accordance with an arbitration clause in the Customer Agreement between J.D. Nicholas and Bernardo. Rather than respond to the Motion to Compel Arbitration, Bernardo sought leave of the Court to depose two witnesses who he claims would testify to the fact that he was not competent to enter into the Customer Agreement containing the arbitration clause.

For the reasons set forth below, the Court grants J.D. Nicholas's motion to compel arbitration and denies Bernardo's motion for leave to take depositions.

## FACTS

In May 2012, Gregory Dean, a J.D. Nicholas employee, placed a sales call to Bernardo in an effort to persuade him to open an investment account with J.D. Nicholas. After the phone call, Dean sent Bernardo a Customer Agreement and Account Application. (Dkt. No. 1 ¶ 15). Only the Account Application had a signature line. The Account Application, however, referenced the

Customer Agreement which contained an arbitration clause. Directly above the signature line, the Account Application contained the following statements:

> By signing below, I acknowledge that I have received, read, understand and agree to be bound by the terms and conditions as set forth in the Customer Agreement ("Customer Agreement") as currently in effect and as amended from time to time.
>
> BY MY SIGNATURE ON THE ACCOUNT APPLICATION, I ACKNOWLEDGE THAT I HAVE RECEIVED, READ, UNDERSTAND AND AGREE TO THE TERMS SET FORTH IN THE FOREGOING AGREEMENT, AND THAT THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE AT SECTION 28 OF PAGE 3.

(Dkt. No. 1-2).

The arbitration clause in the referenced Customer Agreement provides that:

> A. The following general provisions apply to all arbitrations pursuant to this section:
>
>> II. The parties are waiving their right to seek remedies in court, including the right to a jury trial.
>
> B. Any controversy or claim arising out of or relating to this agreement shall be settled by FINRA arbitration procedures then in effect…
>
> C. This agreement to arbitrate constitutes a waiver of the right to seek a judicial forum unless such a waiver would be void under the federal securities laws.

(Dkt. No. 1-1).

Bernardo does not dispute that he signed the Account Application on May 26, 2012 that contained the reference to the Customer Agreement, including the arbitration clause. Instead, Bernardo argues that as a result of his Parkinson's disease and the various medications he took, he lacked the capacity to enter into the agreement, specifically the arbitration clause. Bernardo further alleges that Dean was aware of his incapacity and took advantage of it.

2

## **STANDARD OF REVIEW**

The FAA embodies a federal policy broadly favoring arbitration and states, "an agreement in writing to submit to arbitration . . . shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225–26, (1987) (the FAA "establishes a federal policy favoring arbitration [and] requiring that we rigorously enforce agreements to arbitrate") (internal quotations omitted). Congress designed the FAA to govern the "enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal court." *Jain v. De Mere,* 51 F.3d 686, 688 (7th Cir.1995). The FAA requires courts to stay or dismiss proceedings and to compel arbitration if an issue in controversy is covered by a valid arbitration agreement. 9 U.S.C. §§ 3, 4; *AT & T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1748 (2011). "A district court must promptly compel arbitration once it is satisfied that the parties agreed to arbitrate. 9 U.S.C. § 4. But if the district court determines that the making of the arbitration agreement is seriously disputed, the court shall proceed summarily to the trial thereof." *Tinder v. Pinkerton Sec.,* 305 F.3d 728, 735 (7th Cir.2002) (internal quotation marks omitted).

The Court evaluates a motion to compel arbitration under a similar standard to a motion for summary judgment. *Id.* The "opposing party must demonstrate that a genuine issue of material fact . . . exists." *Id.* "[T]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.* "The party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract. *Id.*

As an initial matter, the Court applies Illinois law. While the contract contains a clause which provides that it is to be governed by the laws of the state of New York, neither party has

argued that New York law differs materially from Illinois law and both parties have cited Illinois law in their briefs. *See Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 659 n.1 (7th Cir. 2002) (citing *Brunswick Leasing Corp. v. Wisc. Cent., Ltd.*, 136 F.3d 521, 525-26 (7th Cir. 1998) ("if neither party argues that the forum state's choice of law rules require the application of another state's substantive law, then the substantive law of the forum state governs")).

## DISCUSSION

### A. By its terms, the contract contained an arbitration clause

Bernardo alludes to the fact that he did not sign the Customer Agreement, which contained the arbitration clause, itself. (Dkt. No. 18 ¶¶ 3-4). The fact that Bernardo did not sign the Customer Agreement is immaterial as the account application incorporated the entire customer agreement by reference. "Generally, one instrument may incorporate another instrument by reference." *Turner Constr. Co. v. Midwest Curtainwalls, Inc.,* 187 Ill.App.3d 417, 135 Ill.Dec. 14, 543 N.E.2d 249, 251 (1989). "The contract must show an intent to incorporate the other document and make it part of the contract itself." *Id.* "When determining under Illinois law whether something is incorporated into a contract, we limit our inquiry to the four corners of the contract." *Atl. Mut. Ins. Co. v. Metron Eng'g & Constr. Co.,* 83 F.3d 897, 901 (7th Cir.1996). Here, the Account Application expressly refers to the Customer Agreement and notes that signing the Account Application manifests an intent to be bound by the Customer Agreement. Therefore, the Court considers the two as a single contract.

### B. Bernardo has not created a triable issue with respect to capacity

The Federal Arbitration Act represents a federal policy in favor or the arbitration of disputes when parties have agreed to arbitrate. *See EEOC v. Waffle house, Inc.*, 534 U.S. 278, 289 (2002). Even so, "[u]nless the parties agree otherwise, they are entitled to have courts resolve their disputes." *Sphere Drank Ins. Ltd. v. All American Ins. Co.*, 256 F.3d 587, 590 (7th

4

Cir. 2001). Therefore, the Court must make a threshold finding that the parties have agreed to arbitrate their disputes before requiring the parties to submit to arbitration. *See id.*at 591 ("the judiciary rather than an arbitrator decides whether a contract came into being") (collecting cases). The Court evaluates only the formation of the agreement to arbitrate, and not the validity of the contract as a whole. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006). The defense of lack of capacity bears directly on the existence of an agreement to arbitrate. *See e.g.*, *Wilhelm. v. A.G. Edwards & Sons, Inc.*, No. 02 C 31, 2002 WL 1377568 at *4 (N.D. Ill. June 21, 2002).

Bernardo alleges that he lacked mental capacity to enter into the arbitration clause and the Court cannot therefore enforce it against him. In support of this claim, he presents only a letter from a doctor and a physician assistant dated June 12, 2013 that alleges that he was evaluated and found to be incompetent due to an unspecified "cognitive impairment." (Dkt. No. 22 Ex. A). J.D. Nicholas has moved to strike this evidence as Bernardo submitted it for the first time as an exhibit to his reply memorandum. *See, e.g.*¸ *Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 788 (N.D. Ill 2011) ("issues that could and should have been raised in an opening brief are waived"). The Court grants that motion, even though the letter is insufficient to support the denial of J.D. Nicholas's motion to compel arbitration. Rather than respond to the motion to stay this case and compel arbitration, Bernardo chose instead to present a motion for leave to depose his own doctors to support his position that he did not have the requisite competency to enter into the arbitration clause. The problem with this strategic approach is that Bernardo failed to develop his argument regarding his response to the motion to compel arbitration and he also presented evidence in the form of a letter from his neurologist that was not presented as part of the

5

complaint and was provided to the Court in his reply. Normally, the Court does not consider these documents. *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("as we have often noted, arguments raised for the first time in a reply brief are waived").

Yet, even if Bernardo had timely and properly submitted this letter, the Court would find it insufficient to create a triable issue as to Bernardo's competency. The document is untimely and irrelevant in that it is dated over a year after the date Bernardo signed the contract and fails to opine on the issue of competency at the time the contract was formed. It further fails to specify when the medical professionals evaluated Bernardo's competency and whether that evaluation covers the period during which Bernardo contracted with Defendants. Finally, the letter provides no basis for its conclusion. Although Bernardo claims in his response that he was incompetent due to Parkinson's disease and the medications he takes for that condition, the letter contains absolutely no reference to Parkinson's or his medications as the cause for his alleged incompetence. As such, the Court is left with a legal conclusion by a neurologist (that the plaintiff is incompetent) without any support from the doctor that the reason for the incompetence is the disease and the medication.

This would be a different case if Bernardo had presented a medical record with his complaint or in response to J.D. Nicholas's motion to compel arbitration that showed that he was diagnosed with Parkinson's disease, that he was being treated with various medications as a result, and that both the disease and the medications resulted in an inability for him to comprehend his actions and to enter into agreements knowingly. Instead, the Court has received a reply brief with a nebulous conclusion by a doctor that he is incompetent. There is no causal connection established between his disease and his mental capacity; there is no causal connection between his medications and his ability to understand the consequence of his actions. Therefore,

the Court is left with conjecture that is insufficient to place a disputed issue of fact into the record. Finally, the Court notes that Bernardo himself is in a unique position to obtain the medical records that would support his claim – these are, of course, his own private records of which he is uniquely in control. If Bernardo has the diagnosis, he should present it. To seek to depose his own treating physician is an oddity in itself because he has the ability to talk to his own doctors to reach the conclusion. As such, since Bernardo enjoys unique access to the records that would support his conclusion that he was incompetent to enter into the arbitration agreement and because he failed to do so, the Court can only conclude that he is unable to present anything further than the one paragraph letter that says he was not competent at a point in time over a year after he signed the contract. That is simply insufficient to create a genuine dispute of fact as to this issue. Bernardo has submitted none of his own medical records or prescription drug information, though he has presumably had access to this information throughout the litigation. In contrast, the record reflects a signed and complete agreement. Therefore, the Court finds that Bernardo has failed to present a triable issue of fact as to whether he was competent at the time he entered into the contract.

### C. The Court denies Bernardo leave to take depositions

Bernardo is not entitled to additional discovery in support of his capacity argument. Bernardo seeks to compel deposition of two medical professionals who will presumably provide information supporting Bernardo's incapacity claim. Bernardo seeks leave of the Court pursuant to Fed. R. Civ. P. 30(a)(2)(A)(iii) because the time for depositions has not yet arisen under Rule 26(a). In support of this motion, Bernardo argues only that the depositions are relevant to his claim of incapacity. He is likely correct in this regard, but it does not explain why he needs a court order to speak with his own witnesses. While Rule 30 requires Bernardo to obtain leave of

7

Court to take depositions, Bernardo does not require the Court's leave to speak with the doctors and obtain affidavits supporting his position. To survive the motion to compel arbitration, Bernardo needed only to file affidavits setting forth a factual basis for his incapacity argument. Despite ample time and access to evidence, Bernardo failed to do so. *Cf. Tinder*, 305 F.3d at 735 (7th Cir.2002).("[T]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor."). The Court therefore denies Bernardo's motion for leave to take depositions.

### D. Dismissal is the proper disposition because all claims are arbitrable

The FAA provides that once the Court determines that arbitration should be compelled, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. The Court finds that dismissal of the case, and not a stay, is the proper remedy in this case.

"There is a growing trend among courts favoring dismissal of a case when all the claims contained therein are subject to arbitration." *See Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1008 (N.D. Ill. 2013) (collecting cases); *see also Baumann v. Finish Line, Inc.,* 421 F. App'x 632, 636 (7th Cir. 2011) (dismissal following grant of motion to compel arbitration was appropriate when all claims were arbitrable). The arbitration clause here required arbitration of "any controversy or claim arising out of or relating to" the agreement. This language is "extremely broad and capable of an expansive reach." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999). Bernardo does not assert and the Court does not conclude that any of the allegations in the Complaint do not arise out of or relate to the customer

agreement. Therefore, the Court finds that the case should be dismissed without prejudice and not stayed because all of the claims are arbitrable.

## **CONCLUSION**

For the reasons stated herein, J.D. Nicholas's motion to compel arbitration is granted, Bernardo's motion for leave to take depositions is denied, and J.D. Nicholas's motion to strike Bernardo's submission is granted. The case is dismissed.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 30, 2014